IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STANLEY SIMS,

      Plaintiff,                           No. CIV S-07-0898 MCE EFB P

    vs.

VEAL, et al.,

      Defendants.                     FINDINGS AND RECOMMENDATIONS

                                /

       Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. The gist of his complaint is that defendants mistreated him because he refused to become a "snitch" or informant. The court granted summary judgment in favor of defendants on all but two of plaintiff's claims in an order dated September 28, 2009. Dckt. No. 69. Defendants now seek summary judgment of the two remaining claims. For the reasons provided below, the court finds that the motion must be denied.

       Plaintiff has also filed two motions seeking a summary award of damages. As discussed below, those motions must also be denied.

**I.    Facts Relevant to the Instant Motion for Summary Judgment**

       In May 2005, plaintiff began working as a cook in one of the CMF kitchens. He alleges that while he was working in the kitchen, defendant Halverson approached him and requested

that he provide information about alleged gang members who also worked in the kitchen. Am. Compl., Dckt. No. 18, at 6. Plaintiff declined, explaining that prisoner informants risk violence at the hands of other prisoners. *Id.* According to plaintiff, defendant Halverson responded to this refusal with a promise that plaintiff would regret his decision. *Id.* at 6-7. Plaintiff further claims that on May 26, 2005, after he refused to be an informant but while he still worked in the kitchen, defendant Halverson confiscated the card plaintiff needed to obtain a liquid diet. *Id.* at 7 (citing to Ex. D); Pl.'s Mem. in Opp'n to Def.'s First Mot. for Summ. J. (hereafter, "Pl.'s First Mem."), at 1. On June 14, 2005, the dietician returned it to him after receiving a grievance from plaintiff. Pl.'s First Mem. at 1. Plaintiff claims that once he received the card, defendant Halverson told him that "he [Halverson] will get plaintiff." Am. Compl. at 7. Defendant Halverson denies that statement and denies that he asked plaintiff to become an informant. Defs.' First Mot. for Summ. J. (Dckt. No. 49), Ex. 1, Decl. of Halverson ("Halverson Decl.") ¶ 5.

Plaintiff also alleges that at some unspecified time, defendant Halverson made telephone calls to the kitchen and encouraged kitchen staff to take adverse action against plaintiff for his refusing to become an informant. Am. Compl. at 9-10. He alleges that thereafter, defendants Lesane and Lee deprived plaintiff of food for six days by confiscating his liquid diet card and refusing to return it until ordered to do so. *Id*. at 10-11. Specifically, on February 23, 2007, as plaintiff was waiting to receive his special liquid diet meal, defendants Lesane and Lee "accosted" him, handcuffed him behind his back, placed him in a holding cell for four hours and confiscated his diet card. *Id*. Plaintiff had specific authorization for a liquid diet because he has no molars. *Id*. In order to obtain his special meals, however, plaintiff had to present a card proving his entitlement to a special diet. *Id*.

Defendants concede that Lesane and Lee confiscated plaintiff's food card during the February 23 incident. Am. Compl. at 11; Defs.' First Mot. for Summ. J., Ex. 2, Lesane Decl. ¶ 6; Ex. 3, Lee Decl. ¶ 2. Plaintiff asserts that as a result, he did not eat for five days. Am. Compl. at 11.

1    Although defendants Lesane's and Lee's accounts provide additional context and detail. Defendant Lesane asserts that when plaintiff was detained, he should have been in an area designated for those who receive special diets. Lesane Decl. ¶ 6. Lesane says that he found plaintiff "out of bounds"[1] attempting to obtain food that was not part of his liquid diet, i.e., chicken. *Id*. For that reason, and pursuant to CDCR policy, defendants Lesane and Lee confiscated the diet card. *Id.*; Lee Decl. ¶ 2.

Plaintiff asserts that for at least a year preceding this incident, the staff who supervised him in his job allowed him to enter the kitchen on his days off to eat left-overs from the previous night's dinner. Pl.'s First Mem., at 10, 20. Plaintiff says that this was an "unwritten privilege" that kitchen staff afforded prisoner employees. *Id*. at 20. Plaintiff concedes that he was attempting to obtain a piece of "soft" chicken from that area on the day in question. *Id.*

## II.  Summary Judgment Standards

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Summary judgment avoids unnecessary trials in cases with no genuinely disputed material facts. *See Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, Rule 56 serves to screen

---

[1] Lesane does not define this term. However, the court understands it to mean that plaintiff was in an area where he should not have been.

3

the latter cases from those which actually require resolution of genuine disputes over material facts; e.g., issues that can only be determined through presentation of testimony at trial such as the credibility of conflicting testimony over facts that make a difference in the outcome. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Focus on where the burden of proof lies as to the issue in question is crucial to summary judgment procedures. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the opposing party must establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the claim under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In this regard, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. In attempting to establish the existence of a factual dispute that is genuine, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.

Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). The opposing party must demonstrate with adequate evidence a genuine issue for trial. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989). The opposing party must do so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. If the evidence presented could not support a judgment in the opposing party's favor, there is no genuine issue. *Id.*; *Celotex Corp.*, 477 U.S. at 323.

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

On May 5, 2008, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d

5

952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## III. Analysis

Plaintiff's remaining claims are of retaliation as to defendant Halverson regarding the May 2005 incident and of cruel and unusual punishment as to all defendants regarding the February 2007 incident.

### A. Retaliation Claim

There are five elements to a First Amendment retaliation claim: (1) a state actor took some adverse action against a prisoner (2) because (3) the prisoner engaged in protected conduct; (4) resulting in the chilling of plaintiff's First Amendment rights or other more-than-minimal harm; and (5) the action did not reasonably advance a legitimate penological goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 & n.11 (9th Cir. 2003); *see also Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff alleges that defendant Halverson retaliated against plaintiff by confiscating the diet card that he needed to obtain a special "no meat" diet. Am. Compl. at 7 (citing to Ex. D).[2] He alleges that defendant Halverson asked him to be an informant so that defendant Halverson could orchestrate the expulsion of individuals he did not like from the kitchen. When plaintiff refused, defendant Halverson warned plaintiff that he would regret his decision. Thereafter, on May 26, 2005, Halverson confiscated plaintiff's diet card. It was returned on June 14, 2005, after plaintiff filed a grievance.

Defendant Halverson argues that plaintiff's retaliation claim against him fails for three reasons: (1) plaintiff did not exhaust his prison grievance; (2) plaintiff cannot show retaliation because defendant Halverson took the card as a legitimate response to plaintiff's misconduct; (3)

---

[2] This claim is distinct from the allegation that nearly two years later, on February 23, 2007, defendants Lesane and Lee confiscated plaintiff's special "liquid" diet card. The latter claim is discussed *infra*.

6

1 plaintiff cannot show that Halverson's action chilled his exercise of First Amendment rights
2 because he filed numerous administrative appeals after the incident.

### I. Exhaustion

The parties do not dispute that plaintiff filed a grievance regarding the May 26, 2005 incident requesting return of the diet card and voluntarily terminated that grievance after the diet card was returned on June 16, 2005. Def.'s Second Mot. for Summ. J., Ex. 3.

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is mandatory and unequivocal. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to suit." (citation omitted)).

To exhaust a grievance against prison staff, California prisoners must follow the appeals process provided for by the California Code of Regulations, title 15, §§ 3084.1 *et seq. See* Cal. Code Regs. tit. 15, § 3084.1(a) (providing that inmates may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare."). To initiate the process, an inmate must fill out a simple form, Dept. of Corrections, Inmate/Parolee Appeal Form, CDC 602 (12/87) ("Form 602"), that is made "readily available to all inmates." Cal. Code Regs. tit. 15, § 3084.1(c) (2004). The inmate must fill out two parts of the form: part A, which is labeled "Describe Problem," and part B, which is labeled "Action Requested." Then, as explained on Form 602 itself, the prisoner "must first informally seek relief through discussion with the appropriate staff member." The staff member fills in part C of Form 602 under the heading "Staff Response" and then returns the form to the inmate.

////

If the prisoner is dissatisfied with the result of the informal review, or if informal review is waived by the State, the inmate may pursue a three-step review process. *See* Cal. Code Regs. tit. 15, §§ 3084.5(b)-(d). Although California labels this three-step process "formal" review (apparently to distinguish this process from the prior step), the three-step process is relatively simple. At the first level, the prisoner must fill in part D of Form 602, which states: "If you are dissatisfied, explain below." The inmate then must submit the form, together with a few other documents, to the Appeals Coordinator within 15 working days (three weeks) of the action taken. *Id*., § 3084.6(c). This level may be bypassed by the Appeals Coordinator in certain circumstances. *Id*., § 3084.5(b). Within 15 work-days after an inmate submits an appeal, the reviewer must inform the inmate of the outcome by completing part E of Form 602 and returning the form to the inmate.

If the prisoner receives an adverse determination at this first level, or if this level is bypassed, the inmate may proceed to the second level of review conducted by the warden. *Id*., §§ 3084.5(c), (e)(1). The inmate does this by filling in part F of Form 602 and submitting the form within fifteen work-days of the prior decision. Within ten working days thereafter, the reviewer provides a decision on a letter that is attached to the form. If the prisoner's claim is again denied or the prisoner otherwise is dissatisfied with the result, the prisoner must explain the basis for his or her dissatisfaction on part H of the form and mail the form to the Director of the California Department of Corrections and Rehabilitation within 15 working days. *Id*., § 3084.5(e)(2). An inmate's appeal may be rejected where "[t]ime limits for submitting the appeal are exceeded and the appellant had the opportunity to file within the prescribed time constraints." *Id*., § 3084.3(c)(6). *Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006). Generally, completion of the third level, the Director's Level of Review, exhausts the remedy. Cal. Code Regs. tit. 15, § 3084.1(a). All steps must be completed before a civil rights action is filed, unless a plaintiff demonstrates a step is unavailable to him; exhaustion during the pendency of the litigation will not save an action from dismissal. *McKinney*, 311 F.3d at 1200. The claim must

be properly exhausted; therefore, an untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the exhaustion requirement. *Woodford*, 548 U.S. at 83-84.

Defendant Halverson contends that, by failing to take his grievance through the Director's Level of review, plaintiff failed to exhaust his administrative remedies. However, the applicable regulations provide that review beyond the First Level is reserved for appeals that were *denied* at the First Level. Cal. Code Regs. tit. 15, § 3084.5(c), (d). While plaintiff ostensibly "withdrew" his grievance, he had been provided the relief he requested – the return of the diet card. Thus, it appears that his appeal was resolved in his favor at the First Level. Moreover, as plaintiff received his diet card back as requested, proceeding through the remaining administrative appeal levels would have been pointless. In such a situation, the issue has been administratively exhausted. *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005) (stating that an issue has been exhausted where the agency has granted some relief and no other relief is available through the administrative process). Accordingly, summary judgment is not appropriate based on plaintiff's failure to process his administrative appeal beyond the First Level.

### ii. Retaliation

Defendant Halverson next argues that plaintiff cannot show that he took the diet card in retaliation for plaintiff's refusal to become an informant because prison records reveal that plaintiff violated prison rules related to his work in the kitchen and his diet cards on several occasions by possessing inmate manufactured alcohol made from items stolen from the kitchen and by stealing diet box meals. *See* Defs.' Second Mot. for Summ. J., Stmt. of Undisp. Facts in Supp. Thereof (hereinafter "SUF") 4, Ex. 2. Defendant Halverson implies that these incidents, which occurred on April 21, 2004, May 12, 2004, May 13, 2005, February 23, 2007, and May 14, 2007, show that it is likely that he took plaintiff's diet card on May 26, 2005 in response to a rules violation by plaintiff rather than in retaliation. He claims that "there is no credible factual support that Defendant Halverson confiscated the diet card for any reason other than Plaintiff's

misuse of it." Def.'s P.'s & A.'s in Supp. of Second Mot. for Summ. J. at 7.

However, the sworn allegations in plaintiff's complaint are adequate to serve as a declaration for purposes of plaintiff's opposition to this motion.[3] Those allegations – that defendant Halverson took the diet card in retaliation – create a factual dispute. Defendant Halverson provides no documentation of misconduct by plaintiff on May 26, 2005, the date he confiscated plaintiff's diet card. Moreover, two of the instances of alleged misconduct by plaintiff which Halverson implies motivated the seizure of the diet card occurred well after the May 26, 2005 confiscation of the card. In short, the issue turns solely on the differing accounts provided by plaintiff and defendant Halverson. The court cannot evaluate the credibility of plaintiff versus defendant Halverson and decide whose version of the facts is the most credible at this stage in the proceedings. *Nelson v. City of Davis*, 571 F.3d 924, 929 (9th Cir. 2009) ("A judge must not grant summary judgment based on his determination that one set of facts is more believable than another.") Accordingly, summary judgment is not appropriate on the retaliation claim against defendant Halverson.

### iii. Chilling of First Amendment Rights

As summarized above, that the defendant's action resulted in the chilling of plaintiff's First Amendment rights or otherwise caused the plaintiff to suffer more than minimal harm is an element of a retaliation claim. *Rhodes*, 408 F.3d at 567-68 & n.11. Defendant Halverson argues that plaintiff cannot establish this element because his numerous inmate grievances between the date of the confiscation and his transfer out of CMF in August 2007 show that plaintiff was not deterred from exercising his First Amendment rights. *See* SUF 6, Ex. 4.

Plaintiff's complaint does not contain an express allegation that defendant Halverson's taking of his diet card in May 2005 chilled his exercise of his First Amendment rights. Indeed,

---

[3] A verified complaint based on personal knowledge setting forth specific facts admissible in evidence is treated as an affidavit. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995); *McElyea v. Babbit*, 833 F.2d 196, 198 (9th Cir. 1987).

10

plaintiff concedes in his opposition to the instant motion for summary judgment that "[t]he confiscation of my Special Diet Card by Def Haverson [sic], on May 26, 2005, did *not* chill my First Amendment rights; what it did was done in retaliation for plaintiff exercising my First Amendment rights to file a grievance[.]" Pl.'s Opp'n to Defs.' Second Mot. for Summ. J. at 2-3 (emphasis added). Yet, plaintiff specifically alleges that "Sergeant La Sain [sic] took my diet card just to punish me." Pl.'s Opp'n at 11 & Ex. J1. He also alleges generally that the defendants' actions caused him fear and other psychological distress. Thus, his eschewing the term "chill" to characterize the facts he has alleged does not negate the specific facts alleged. If his allegations are proven, they would establish grounds for relief on a claim of retaliation. Thus, these allegations are sufficient to create a triable issue as to whether defendant Halverson's conduct caused plaintiff to suffer more-than-minimal harm. Furthermore, "a plaintiff does not have to show that his speech was actually inhibited or suppressed, but rather that the adverse action at issue would chill or silence a person of ordinary firmness from future First Amendment activities." *Brodheim*, 584 F.3d at 1271 (internal quotation marks omitted); *Rhodes*, 408 F.3d at 568-69. Thus, the fact that plaintiff himself was not deterred from filing inmate grievances is not fatal to his retaliation claim. Accordingly, defendant Halverson's motion for summary judgment on plaintiff's claim that defendant Halverson violated his First Amendment rights by retaliating against him must be denied.

**B. Eighth Amendment Claim Against Defendants Lesane and Lee**

Defendants argue that summary judgment is appropriate on plaintiff's claim that the confiscation of his diet card on February 23, 2007 by defendants Lesane and Lee and the failure to return the card for six days violated his right to be free from cruel and unusual punishment under the Eighth Amendment.

The Eighth Amendment's prohibition on cruel and unusual punishment encompasses deliberate indifference by prison officials to some basic inmate need such as food, clothing, shelter, medical care or safety. *See Wilson v. Seiter*, 501 U.S. 294, 303-04 (1991); *Rhodes v.*

*Chapman*, 452 U.S. 337, 347 (1981).

Plaintiff is missing his molars and his authorization for a liquid diet during the time in question is not disputed. To obtain this special diet, plaintiff was required to present his diet card and go to a location of the cafeteria that is designated for prisoners with special dietary needs. Here, he claims that on the date in question he went, as usual, to "chowhall #3" to obtain his liquid diet, but he was "accosted [sic] by Sergeant Lesane [sic] and c/o R. Lee while waiting to eat." Am. Compl., at 10. He states that they placed him in a holding cell and confiscated his diet card.

Defendants do not dispute confiscating the card. Plaintiff alleges that he was without his diet card for six days and he could not eat without his liquid diet. Am. Compl., at 11. The defendants dispute this claim and contend that plaintiff cannot establish a violation of the Eighth Amendment because of the lack of documentary evidence showing that he was deprived of food during the six-day period that his diet card was confiscated or that he suffered any symptoms of food deprivation. According to defendants, no notation was made in plaintiff's C-File or medical file that plaintiff had not eaten, although, had that been the case, prison staff would have noticed and taken action. CDCR policy provides that inmates whose special diet cards have been confiscated are to receive their meals through the regular meal line. SUF 9. Plaintiff was seen by his mental health case manager on February 28, 2007, after he requested a consultation due to his feelings of frustration over the loss of his job in the kitchen and the confiscation of his diet card. The case manager's notes from the interview do not mention food deprivation. SUF 10-12 & Ex. 7. In addition, two "Dietary Referral Forms" – one dated March 2006 and one dated April 2007 – indicate that plaintiff's weight was consistent at 185 pounds from March 2006 through April 2007. SUF 13 & Ex. 9.

Plaintiff responds that he submitted "about three medical forms" about not eating and has attached his request for mental health services on February 26, 2007 on which he wrote: "I am having problems getting my meals because Sergeant La Sain [sic] took my diet card just to

12

punish me." Pl.'s Opp'n at 11 & Ex. J1. The form also shows psychologist N. Tucci's conclusion that plaintiff was suffering no acute distress, although that observation may have been purely of plaintiff's mental, rather than physical, state. Plaintiff also states that he ate bread out of the garbage and lost weight.

Defendants' evidentiary submissions, while indicating that plaintiff had access to the regular dining hall during the time that his diet card was confiscated in February 2007, do not establish that the foods provided there were edible to plaintiff. Nor do the documents submitted by defendants show that plaintiff did not lose weight or otherwise physically suffer from food deprivation as a result of the confiscation, as it is possible that the weights recorded on the "Dietary Referral Forms" were reported by plaintiff or taken from other records, rather than obtained after actual discrete weight measurements. Plaintiff has testified in his verified complaint that the confiscation of his diet card in February 2007 caused him to be denied food and suffer extreme hunger and pain. Am. Compl. at 11. While plaintiff's purported failure to seek medical treatment for those symptoms may lessen the credibility of that testimony, the court cannot assess plaintiff's credibility at this stage. *Nelson*, 571 F.3d at 929. Accordingly, summary judgment is not appropriate on plaintiff's claim that defendants violated his Eighth Amendment rights by confiscating his diet card on February 23, 2007 and not returning it for six days.

### C. Remaining Eighth Amendment Claim

Plaintiff argues in his opposition to the instant motion for summary judgment that defendant Halverson violated his Eighth Amendment rights by confiscating his diet card on May 26, 2005. The court has reviewed plaintiff's complaint and finds that such a claim was fairly pleaded. Defendant Halverson has not addressed that claim in either summary judgment motion and has filed no reply to plaintiff's opposition to the instant motion. Accordingly, the court has no basis for granting summary judgment on this claim. Defendant Halverson must either file an appropriate motion addressing this claim or proceed to trial on it. If there is no genuine factual

issue warranting trial on this claim, defendant must file an appropriate dispositive motion in accordance with this order.

### D. Plaintiff's Motions for Damages

Plaintiff also filed two motions for monetary relief, both of which must be denied. On September 8, 2009, he filed an "Application to Sanction Defendant Halverson." Dckt. No. 66. By this motion, plaintiff asks the court to order monetary damages against defendant Halverson. Plaintiff contends that defendant Halverson's alleged misconduct violates California Penal Code § 147 and constitutes extortion. As plaintiff's claims against defendant Halverson have not been adjudicated on the merits, any award of damages would be inappropriate and premature. Accordingly, plaintiff's motion for sanctions must be denied.

On October 28, 2009, plaintiff filed a "Motion for the Court to Award Damages for Winning Summary Judgment Against Defendants Haverson [sic], Le Sane [sic], R. Lee." Dckt. No. 71. No claims were adjudicated on the merits in plaintiff's favor by the court's September 28, 2009 ruling denying summary judgment (in part) to defendants. Rather, the court declined to grant summary judgment in favor of defendants on certain claims, leaving those claims to be determined on the merits in the future. Because no claim has been adjudicated on the merits in plaintiff's favor, he is not entitled to damages from defendants. Accordingly, plaintiff's motion for damages must be denied.

### V. Conclusion

For the reasons explained above, the defendants are not entitled to summary judgment on plaintiff's claims that on May 26, 2005, defendant Halverson retaliated for engaging in protected activity by confiscating plaintiff's diet card and that in February 2007 the defendants withheld food from plaintiff for a period of five days in violation of the Eighth Amendment.

Accordingly, it is RECOMMENDED that:

1. Defendants' November 25, 2009 motion for summary judgment be denied.

////

2. Defendants be given 30 days to file an appropriate motion as to plaintiff's claim that defendant Halverson violated his Eighth Amendment rights by confiscating his special diet card on May 26, 2005 or, alternatively a pretrial statement as to that claim and plaintiff's remaining claims.

3  Plaintiff's September 8, 2009 "Application for Sanctions" (Dckt. No. 66) and October 28, 2009 "Motion for the Court to Order Damages" (Dckt. No. 71) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 31, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE